USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/12/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID C. NAHABEDIAN,
BARTON F. GRAF, JR., and
INTEGRATION PARTNERS
CORPORATION, a Massachusetts
corporation,

                Plaintiffs,

v.

INTERCLOUD SYSTEMS, INC.,
MARK MUNRO, and DANIEL J.
SULLIVAN,

                Defendants.

No. 15-CV-00669 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiffs David C. Nahabedian and Barton F. Graf, Jr., former owners of cloud computing company Integration Partners-NY Corporation ("IPNY"), bring this lawsuit with Integration Partners Corporation (collectively "Plaintiffs"), which arises out of the sale of IPNY to InterCloud Systems, Inc. In their First Amended Complaint ("FAC" or "Complaint"), Plaintiffs allege six causes of action against InterCloud as well as one against InterCloud's corporate officers, Mark Munro and Daniel J. Sullivan (collectively "Defendants") in connection with Defendants' alleged failure to pay $2.5 million in contractually required payments. Defendants move to dismiss all causes of action with the exception of the breach of contract claim against InterCloud. For the reasons discussed below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

    On December 12, 2013, Plaintiffs and a third co-owner of IPNY, Frank Jadevaia, executed a Stock Purchase Agreement ("SPA") that provided for the sale of IPNY to InterCloud for more

than $20 million. FAC ¶ 4. Although the exact purchase price was not enumerated in the parties' agreement, the SPA contained a formula by which the parties were to eventually compute the price. *Id.* ¶ 4, 6. The sole variable in that formula was IPNY's consolidated earnings before interest, taxes, depreciation, and amortization for the twelve-month period ending September 30, 2013 ("TTM EBITDA"). *Id.*

Plaintiffs allege that "[b]efore and after closing, InterClound repeatedly represented that TTM EBITDA totaled $3,500,000 based on InterCloud's extensive due diligence and audits for over a year prior to the closing." *Id.* ¶¶ 7, 25. Although Plaintiffs claim that InterCloud assured them "that there would be no downward adjustment of TTM EBITDA below $3,500,000," *id.* ¶ 8, a provision of the SPA permitted InterCloud to seek changes to the sale price post-closing, *id.* ¶ 40. To propose an adjustment, the SPA required InterCloud to provide written notice of any purported alterations in a "Purchaser Notice," which was to be delivered "as promptly as practicable, but not later than forty-five (45) days after the Closing Date." *Id.* In the event that it failed to deliver a Purchaser Notice, InterCloud would "be deemed to have accepted the purchase price calculations at closing." *Id.* The closing took place on January 2, 2014, and, in accordance with the SPA, InterCloud paid each IPNY co-owner $12,509,746.71 in sale proceeds and placed $941,593.84 in escrow that was scheduled to be released on September 1, 2014. *Id.* ¶ 4, 32. In addition, Plaintiffs allege that "contemporaneous with the closing, the parties agreed that, in the event that Plaintiffs were to make payments to corporate vendors of IPNY on InterCloud's behalf . . . such payments would be paid for and reimbursed in full promptly by InterCloud upon notice." *Id.* ¶ 39.

At some point in October 2014, Plaintiffs contacted InterCloud to request that it release the money held in escrow, noting that the September 1, 2014 deadline to do so had passed. *Id.* ¶ 9. On October 20, 2014, InterCloud refused. *Id.* ¶ 48. Instead, Munro identified two purportedly undiscovered expenses—totaling approximately $152,000—that he claimed should have been but were not included in the closing calculations. *Id.* The next day, InterCloud's counsel informed Plaintiffs that the expenses actually totaled $199,528.18. *Id.* ¶ 50. Plaintiffs disputed the adjustments, but demanded that InterCloud, at the very least, release the amount in escrow less the disputed $199,528.18 by November 17, 2014. *Id.* ¶ 52.

On November 18, 2014, more than eleven months after the closing, InterCloud delivered a purported Purchaser Notice, which, Plaintiffs allege on information and belief, was "prepared under direction of Mr. Munro and Mr. Sullivan." *Id.* ¶ 53. In the Notice, InterCloud demanded a refund of $2,940,530 from Plaintiffs, based in part on a more than $1 million reduction of TTM EBITDA from the $3.15 million figure discussed contemporaneously with closing. *Id.* ¶¶ 10, 53. Then, on December 9, 2014, InterCloud delivered a second Purchaser Notice further reducing the calculation of TTM EBITDA, which, Plaintiffs allege, "was prepared under direction of Mr. Munro and Mr. Sullivan." *Id.* ¶ 56. Plaintiffs assert that InterCloud provided no documentation for these calculations beyond "a two-page Profit and Loss Statement" that was "impossible for [Plaintiffs] to review." *Id.*

Finally, Plaintiffs assert that "based on InterCloud's representations and admissions" in loan documents to which Plaintiffs were not a party, "the full amount of the purchase price is owed to Plaintiffs under the SPA." *Id.* ¶ 63. In support, Plaintiffs point to a provision in a loan made by Jadevaia, who was by then acting as InterCloud's president, to InterCloud. *Id.* ¶¶ 61–62. Plaintiffs allege that in that provision, "InterCloud expressly waived any claims, adjustments, or rights of

offset with respect to the full amount owed by InterCloud to Mr. Jadevaia under the SPA, based on its agreement that '[n]o party has any defense, claim, counterclaim, or right of offset against the . . . Promissory Note,'" *id.* ¶ 62 (alteration in original), and in light of this provision, "the full amount of the purchase price is owed to Plaintiffs under the SPA as well," *id.* ¶ 63.

Plaintiffs filed this lawsuit against Defendants on January 28, 2015, and on April 23, 2015, Defendants filed the instant partial motion to dismiss. On December 22, 2015, Plaintiffs moved to amend their Original Complaint, and on January 5, 2016 the parties stipulated to the amendments, but "further stipulated and agreed . . . that Defendants' pending Motion to Dismiss . . . shall equally apply and will be considered by the Court with regard to Plaintiffs' First Amended Complaint." Dkt 34. Plaintiffs filed the First Amended Complaint on January 8, 2016.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).

## DISCUSSION

InterCloud moves to dismiss each of the seven claims asserted in the Complaint with the exception of Claim I for breach of contract. The motion is granted as to Claim II for breach of the covenant of good faith and fair dealing, Claim III for intentional breach of contract, Claim IV for estoppel, and Claim VI for declaratory relief, but is denied as to Claim V for unjust enrichment and Claim VII for tortious interference with contractual relations against Munro and Sullivan.

I.  **Claim II—Good Faith and Fair Dealing**

Defendants move to dismiss Claim II of the Complaint alleging a breach of the implied covenant of good faith and fair dealing. Under New York law, which both parties agree applies here, *see* Pls.' Mem. 6; Defs' Mem. 7, a claim for breach of the covenant is adequately pled when "one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of the bargain." *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007). While all "parties to an express contract are bound by an implied duty of good faith," a "breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). Plaintiffs do not adequately plead such a claim.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. In other words, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Plaintiffs argue that their claim for breach of the implied covenant is not duplicative because it is based on "false statements with respect to post-closing adjustments and calculations of IPNY TTM EBITDA made after the breach took place." Pls.' Mem. 7. But these statements—irrespective of when they were made—also constitute the basis for Plaintiffs' breach of contract claim. Because the amount due under the SPA depends, *inter alia*, on the parties' adherence to the SPA's procedural provisions, *see* FAC ¶ 45, and the actual value of TTM EBITDA, *see id.* ¶ 34, the Court will need to determine the timeliness and accuracy of the post-closing adjustments and calculations before it can decide whether either party breached the agreement. In either case,

the same facts will underlie both the claim for breach of contract and that for breach of the covenant of good faith and fair dealing.

Furthermore, "under New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant." *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003); *accord Canstar v. J.A. Jones Const. Co.*, 622 N.Y.S.2d 730, 731 (N.Y. App. Div. 1995). In the Complaint, Plaintiffs fail to identify any additional damages—beyond those pled for breach of contract—that are recoverable due to the alleged violation of the covenant of good faith and fair dealing. Indeed, both causes of action allege damages under and specific performance of the SPA. FAC ¶¶ 70, 77. Plaintiffs' claim for breach of the covenant of good faith and fair dealing is thus dismissed.

## II. Claim III—Intentional Breach of Contract

Defendants next move to dismiss Claim III, which Plaintiffs titled the "intentional breach of contract." *See id.* at 22. In essence, Plaintiffs allege that the means by which InterCloud breached the SPA was so egregious as to sound in tort. The Complaint asserts that "InterCloud's breaches of contract were willful and intentional, and consisted of a deliberate scheme to cause injury to Plaintiffs." *Id.* ¶ 80. Specifically, Plaintiffs point to InterCloud's effort to "seek a refund from [Plaintiffs] without basis in the amount of $2,941,530" while simultaneously overlooking any refund that Jadevaia, now InterCloud's president, may owe. *Id.* ¶¶ 81–82. As damages, Plaintiffs "request damages and specific performance of . . . the SPA." *Id.* ¶ 84.

While in some limited circumstances a breach of contract may create tort liability, Plaintiffs cannot state a tort claim here because they fail to plead two essential elements: duty and damages. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty

independent of the contract itself has been violated." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012); *accord Facella v. Fed'n of Jewish Philanthropies of New York, Inc.*, No. 98-CV-3146 (DAB), 2004 WL 1700616, at *7 (S.D.N.Y. July 30, 2004) (collecting cases). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193–94 (N.Y. 1987); *see also Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 177 (N.Y. App. Div. 1967) (finding a violation of the common law duty "not to act willfully to destroy the property of another"). Put another way, only certain types of contracts, which by their nature are accompanied by a duty of care, create tort liability. For example, the New York Court of Appeals has allowed the simultaneous pleading of a tort and breach of contract claim against an alarm company because the nature of providing emergency alarm services created an independent duty to act with reasonable care. *See Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1370 (N.Y. 1992). Nowhere, in contrast, do Plaintiffs allege that InterCloud owed them a non-contractual duty.

Moreover, Plaintiffs fail to identify any independent damages resulting from InterCloud's allegedly tortious behavior. In *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153 (2d Cir. 1996), the Second Circuit upheld the dismissal of a tort action that, like Plaintiffs' claim, was essentially one of contract. *Id.* at 162. There, a construction contractor continuously underpaid its subcontractor for work performed and then terminated the contract when the subcontractor's job was almost complete. *Id.* The subcontractor filed suit for breach of contract and tort. *Id.* at 158–59. The tort claim against the general contractor sought (i) withheld payments and (ii) lost business opportunities. *Id.* With respect to withheld payments, the circuit upheld the dismissal of the tort allegations because they were

"entirely duplicative of contract damages." *Id.* at 161. Regarding lost business opportunities, the court similarly refused the plaintiff's efforts to "recast[] the breach as a tort." *Id.* at 162. In so holding, the court noted that "the tort claim relates solely to breach of a bargain, egregious though it may have been." *Id.*

Here, Plaintiffs' tort claim fails for the same reasons. As in *Merritt Meridian*, the alleged "willful, bad faith behavior" is insufficient to convert a contract claim into a tort. Indeed, Plaintiffs do not even attempt to allege damages beyond those owed to them under the contract: they request "damages and specific performance of the enforcement of the SPA and InterCloud's payment obligations under the SPA." FAC ¶ 84. As these damages are "entirely duplicative" of those sought under the breach of contract, Plaintiffs' third claim is dismissed.

### III. Claims IV and V—Quasi-Contract Claims

In Claims IV and V, Plaintiffs allege quasi-contract claims of estoppel and unjust enrichment, respectively. Defendants again move for dismissal on the grounds that quasi-contract claims are duplicative of the breach of contract cause of action because neither party disputes that the SPA is a binding contract. *See* Defs.' Mem. 14. Plaintiffs "agree with Defendants that unjust enrichment and promissory estoppel are quasi-contract claims viable only in the absence of an enforceable agreement between the parties governing the matter of the dispute," but nonetheless contend that their claims should stand because "Plaintiffs are allowed to plead causes of action in the alternative" and the SPA does not govern every allegation in the unjust enrichment claim. Pls.' Mem. 10–11.

The parties agree that "[u]nder New York law, '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" *Valley Juice Ltd., Inc. v. Evian Waters*

*of France, Inc.*, 87 F.3d 604, 610 (2d Cir. 1996) (quoting *Clark-Fitzpatrick*, 516 N.E.2d at 193) (alteration in original). Here, however, it is undisputed that the SPA is a valid and enforceable contract. *See* FAC ¶¶ 3, 4, 44–45, 50–51, 55; Defs.' Mem. 14 ("There is no genuine dispute that the SPA is the binding contract that governs the claims at issue in the present case.").[1] Where a valid contract exists, quasi-contract claims may be pled in the alternative only "where there is a bona fide dispute concerning . . . whether the contract covers the dispute in issue." *Randall v. Guido*, 238 A.D.2d 164, 164 (N.Y. App. Div. 1997). Otherwise, quasi-contract claims "must be dismissed as duplicative of a breach of contract claim." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 668 (S.D.N.Y. 2007).

Although all other quasi-contractual allegations in the Complaint are duplicative of the breach of contract claim and must be dismissed, Plaintiffs' demand for reimbursement of post-closing vendor invoices states a claim for unjust enrichment. As Plaintiffs assert, it is the only claim for which "Defendants may argue that reimbursement . . . is not required by the terms of the SPA and not within its scope." Pls.' Mem. 11. Plaintiffs allege that the obligation for reimbursement arose not from the SPA, but when, "contemporaneous with the closing, the parties agreed that, in the event that Plaintiffs were to make payments to corporate vendors of IPNY on InterCloud's behalf post-closing . . . such payments would be paid for and reimbursed in full promptly by InterCloud upon notice." FAC ¶ 38. Although Defendants acknowledge the validity of the SPA, they have not addressed the enforceability of this additional alleged agreement for

---

[1] Some district courts have held that a *plaintiff's* "failure to allege that the contracts at issue are invalid or unenforceable precludes it, under *Clark–Fitzpatrick*, from seeking quasi-contractual recovery for events arising out of the same subject matter," *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009); *accord King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09-CV-3980 (DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) (same), while others have refused to do so, *see St. John's Univ.*, 757 F. Supp. 2d at 184 ("Though some cases suggest that a plaintiff's mere allegation of an enforceable contract is enough to prevent him from even *pleading* an alternative claim for unjust enrichment, that position cannot be reconciled with the text of Rule 8(d), and is unpersuasive to this court's analysis."). This Court need not address this question because both parties agree that the SPA is enforceable.

reimbursement. Accordingly, Plaintiffs' allegations state a claim for unjust enrichment with respect to the vendor payments. *See Lax v. Design Quest, N.Y. Ltd.*, 118 A.D.3d 490, 491 (N.Y. App. Div. 2014) ("The unjust enrichment claim was correctly sustained because the parties dispute the existence of the various alleged express contracts.").

Each of Plaintiffs' other quasi-contract allegations, however, do not state a claim. Because, except as to the vendor invoices, Plaintiffs have not even attempted "to argue that the contract at issue somehow does not govern the dispute between the Parties," the other allegations are "duplicative and must be dismissed." *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-CV-7134 (VM), 2015 WL 4940126, at *6 (S.D.N.Y. Aug. 10, 2015).

### IV. Claim VI—Declaratory Relief

Defendants next move to dismiss the fifth cause of action for a declaratory judgment. "The Declaratory Judgment Act—not state declaratory judgment law—provides the procedural mechanism for granting declaratory relief in federal diversity cases." *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007). "Courts have consistently interpreted [the Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Importantly, "[i]t is well established that an injunction is a remedy, not a cause of action, and therefore can issue only on the basis of an independent claim for relief." *Pitcairn Properties, Inc. v. LJL 33rd St. Assoc., LLC*, No. 11-CV-7318 (JSR), 2013 WL 705861, at *2 n.1 (S.D.N.Y. Feb. 21, 2013).

Plaintiffs seek a declaratory judgment "declaring that they are entitled to payments of not less than $2,546,141.97 under the SPA, and specific performance of the InterCloud's [sic] obligations under the SPA." FAC ¶ 97. Under the Declaratory Judgment Act, a court must grant

declaratory relief if the judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue"; or (2) "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).

Declaratory relief would serve neither objective here. First, the judgment will not clarify the legal relations at issue because "the determination sought—that [Defendants] breached the [] Agreement—will already be addressed in the breach of contract claim." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006); *see also, e.g.*, *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("The determination the Plaintiffs seek will be adjudicated in their common-law causes of action so a declaratory judgment will serve no useful purpose."); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, No. 92-CV-0832E(M), 1993 WL 379589, at *2 (W.D.N.Y. Sept. 21, 1993) ("A declaratory proceeding at this juncture would serve no useful purpose because . . . the relief the defendant seeks can already be had via a trial on the merits."). Moreover, because a declaratory judgment is a remedy and not an independent cause of action, Plaintiffs "can apply for that remedy once liability has been established" under any other claims. *Chiste*, 756 F. Supp. 2d at 407–08.

Second, declaratory relief will not afford relief from uncertainty, insecurity, or the controversy giving rise to the proceeding as the wrongs alleged occurred in the past. Here, "no cloud of uncertainty hangs over [the parties]. The parties have already chosen to pursue their coercive remedies and [Plaintiffs have] not been left awaiting the initiation of legal proceedings while damages accrue." *Camofi Master LDC*, 452 F. Supp. 2d at 480. Claim VI is dimissed.

## V.  Claim VII—Tortious Interference

Plaintiffs' final cause of action is for tortious interference with contractual relations against Defendants Munro and Sullivan. "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). Defendants argue that the allegations in the Complaint fail to allege facts sufficient to state the first and third elements. The Court disagrees.

Under the first element, "a plaintiff bringing a tortious interference claim must show that the defendants *were not parties to the contract*." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (emphasis in original). Generally, "a corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer and did not commit independent torts or predatory acts against another." *G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 911 (S.D.N.Y. 1994). An exception applies, however, where "the acts of the defendant corporate officers which resulted in the tortious interference with contract either were beyond the scope of their employment or, if not, were motivated by their personal gain, as distinguished from gain for the corporation." *Petkanas v. Kooyman*, 303 A.D.2d 303, 305 (N.Y. App. Div. 2003).

Plaintiffs allege in their Complaint that Munro and Sullivan acted beyond the scope of their employment as officers of InterCloud when they "repeatedly generated and communicated

documents recited herein above containing false and misleading information." FAC ¶ 101. In particular, Plaintiffs assert that in response to their demand for the release of the escrow funds, Munro sent a message on October 20, 2014 identifying a purported post-closing adjustment to the purchase price of $152,000, *id.* ¶ 48, and when InterCloud provided spreadsheets the next day increasing the purported adjustments, that "the spreadsheets were prepared under the direction of Mr. Munro and Mr. Sullivan," *id.* ¶ 50. Further, Plaintiffs claim that the professed Purchaser Notices, delivered November 18, 2014 and December 9, 2014, were "prepared under direction of Mr. Munro and Mr. Sullivan." *Id.* ¶¶ 53, 56.

These allegations are sufficient to survive a motion to dismiss. In *Kosowsky v. Willard Mountain, Inc.*, 90 A.D.3d 1127 (N.Y. App. Div. 2011) the Appellate Division refused to dismiss a claim for tortious interference because "[t]he actions that plaintiffs ascribe to [the corporate officer]—that is, deliberately deceiving them by falsifying the income figures of the corporations that he controlled—cannot be construed as within the scope of his corporate responsibilities." *Id.* at 1130. Here, Plaintiffs allege a similar falsification of records. *See* FAC ¶ 101–103. These allegations, if true, would have been undertaken in bad faith and outside the scope of the Defendants corporate responsibilities. *See Kosowsky*, 90 A.D.3d at 1130; *see also Cespuglio v. Ward*, No. 03-CV-8603 (SAS), 2004 WL 1088235, at *6 (S.D.N.Y. May 13, 2004) ("[Plaintiff] explicitly alleges that the inducement was 'an abuse of [the defendant's] authority' and was 'malicious,' and 'motivated by animosity.' Those allegations are sufficient to bring this case outside of the ordinary rule governing agents of employers.").

Defendants also argue that Plaintiffs fail to plausibly allege "that Messrs. Munro and Sullivan 'induced the breach' of the SPA." Defs.' Mem. 17. The Complaint, however, plainly states that the individual defendants supervised the production of fraudulent spreadsheets that

formed the basis of InterCloud's Purchaser Notices—the delivery of which Plaintiffs claim constitutes a breach. FAC ¶¶ 48, 50, 53–54, 56, 100–103. These allegations suffice at this early stage.

Finally, Defendants argue that "Munro and Sullivan were motivated by their own economic interest" in InterCloud, which is a complete defense to a tortious interference claim. "Under this defense, where a third party has an 'economic interest' in an entity and interferes with an existing contractual relationship between the plaintiff and that entity, such interference is considered privileged and the plaintiff must show malice or illegality in order to establish a tortious interference claim." *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 283 (2d Cir. 2007).

The "economic interest" defense, however, is inapplicable at this time. At the pleading stage, "dismissal on this basis would be appropriate only if [a plaintiff's] fact allegations establish, as a matter of law, that [the defendant's] actions were taken to protect an economic interest." *Armstrong Pump, Inc. v. Hartman*, 745 F. Supp. 2d 227, 239 (W.D.N.Y. 2010). While Defendants may indeed ultimately prevail under the this defense, "[s]everal courts in the Second Circuit have refused to apply the economic interest defense at the pleading stage to dismiss complaints for tortious interference with contract, explaining that the facts of the pleadings were not sufficiently developed to show entitlement to the defense." *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11-CV-5832 (AJN), 2012 WL 3542196, at *9 (S.D.N.Y. Aug. 15, 2012); *see also N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12-CV-3584 (JCF), 2013 WL 1500333, at *5 (S.D.N.Y. Apr. 12, 2013) ("Since a motion to dismiss only addresses the sufficiency of the pleading, generally it is improper for the Court to make a determination at this juncture as to the economic interest defense."); *Reach Music Pub., Inc. v.*

14

*Warner/Chappell Music, Inc.*, No. 09-CV-5580 (LTS), 2011 WL 3962515, at *6 (S.D.N.Y. Sept. 7, 2011) *amended on denial of reconsideration,* No. 09-CV-5580 (LTS), 2012 WL 695461 (S.D.N.Y. Mar. 5, 2012) ("It is improper for the Court to make a determination at this juncture as to the economic interest defense.").

Because the Compliant adequately alleges each of the elements of a tortious interference claim against Munro and Sullivan, the motion to dismiss Claim VII is denied.

## CONCLUSION

For the foregoing reasons, Defendants motion to dismiss is granted in part and denied in part and Counts II, III, IV, and VI are dismissed in their entirety. The Clerk of Court is respectfully directed to close item 15 on the docket.

SO ORDERED.

Dated:   January 12, 2016
         New York, New York

_____
Ronnie Abrams
United States District Judge